**Harold S. RODOVICH, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 74–1047.

United States Court of Appeals, Fifth Circuit.

Aug. 26, 1974.

Rehearing Denied Oct. 4, 1974.

Ray Sandstrom, Fort Lauderdale, Fla., for petitioner-appellant.

Jerome B. Ullman, Jr., Asst. U. S. Atty., Miami, Fla., for respondent-appellee.

Before MOORE,* AINSWORTH and RONEY, Circuit Judges.

PER CURIAM:

This is an appeal from an order denying appellant's motion under 28 U.S.C. § 2255 to set aside his conviction in the Southern District of Florida in March 1971 and his sentence for counterfeiting. Appellant's conviction was affirmed by this Court on direct appeal in United States v. Russo, 455 F.2d 1225 (5th Cir.), cert. denied, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972). The present appeal does not involve the correctness of the prior conviction but, rather, attempts to brand as impermissibly tainted information which the Government was alleged to have illegally obtained in a federal prosecution against him in Connecticut as the result of the arrest of appellant, one Michael Calarusse, and confederates. Evidence seized at that time and leads obtained therefrom are said to have "tainted" appellant's Miami trial. A brief statement of the facts is sufficient to demonstrate the lack of merit in this argument.

On September 19, 1970 four men, appellant Harold S. Rodovich, his brother, Peter, Michael Raymond Calarusse, and George C. Reynolds, drove into an East Hartford, Connecticut, gasoline station in two automobiles. They left one car, the property of George Reynolds, for servicing and departed in the other. During the servicing, the attendant discovered what he believed to be forty counterfeit $20 bills and notified the police. The next day the four men returned for Reynolds' car in the same car in which they had departed the day before. The men were identified by the attendant and arrested.

After being told of their rights, none of the four wished to speak with the East Hartford police. However, after a

* Hon. Leonard P. Moore, Senior Circuit Judge of the Second Circuit, sitting by designation.

short while, Calarusse requested to speak with a friend in the F.B.I. This friend put Calarusse in touch with the Secret Service with whom Calarusse decided to cooperate.

In fulfillment of his desire to cooperate, Calarusse flew to Miami and introduced appellant to an undercover Secret Service Agent. Appellant sold $2,660 of counterfeit notes to the Agent and offered future sales in excess of $100,000. On November 10, 1970, appellant was arrested in the Miami Airport in possession of $250,000 of counterfeit $20 bills. The Miami crime was completely independent of and unrelated to the previous Connecticut crime. The only participation Calarusse had in the Miami transactions was to arrange the original introduction.

It was appellant's contention at his § 2255 hearing that the cooperation of Calarusse which led to appellant's arrest and conviction stemmed from Calarusse's allegedly illegal arrest in Connecticut and thus was fruit from a poisonous tree. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

The facts do not support appellant's "fruit of the poisonous tree" theory. Calarusse's arrest in Connecticut was legal. The $800 in counterfeit bills was not suppressed. Calarusse's motive in cooperating was solely to try to extricate himself from the Connecticut crime. His trip to Miami for this purpose was wholly independent of any proof discovered legally or illegally in Connecticut. Thus, there was no poisoned fruit—in fact, no fruit and no tree.

Calarusse's participation and his reasons therefor have been well summarized in the words of the District Court:

> He was prepared to save his own hide, and whether or not Mr. Rodovich was illegally arrested or whether or not he had property seized from him, or whether Calarusse even was illegally arrested, Calarusse was perfectly prepared to talk.

Calarusse's cooperation was "because he saw himself in a situation and decided to get out of it. * * * "

Appellant's conviction resulted solely from his Miami crime, i. e., conspiracy to violate the counterfeiting laws. United States v. Russo, *supra*. Although he unsuccessfully raised the defense of entrapment, on that trial neither his prosecution nor his cross-examination arose out of any unlawful governmental conduct.

The order denying appellant's § 2255 motion is affirmed.